[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No.  12-11037
Non-Argument Calendar
_____

D.C. Docket No. 6:10-cv-01524-JA-DAB


CAROLYN CHAVEZ,

Plaintiff-Appellant,

versus

URS FEDERAL TECHNICAL SERVICES, INC.,
f/k/a EG&G TECHNICAL SERVICES, INC.,

Defendant-Appellee.


_____

Appeal from the United States District Court
for the Middle District of Florida
_____
(January 3, 2013)

Before TJOFLAT, CARNES and JORDAN, Circuit Judges.

PER CURIAM:

Carolyn Chavez appeals the district court's grant of summary judgment in

favor of her former employer, URS Federal Technical Services, Inc., on her sex

discrimination claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a), and the Florida Civil Rights Act of 1992, Fla. Stat. § 760.10(1). Ms. Chavez contends that URS' proffered reason for firing her from her position as branch manager was merely a pretext for sex discrimination. She asserts that Kirt Bush, the male manager in charge of her employment status, harbored sexually discriminatory animus against her, treated her worse than similarly situated male employees, and retained Michael Sweeney, a less qualified male employee, after letting her go. She argues that URS had money-saving options other than terminating her and that URS fired a disproportionate percentage of females. Because Ms. Chavez has failed to demonstrate that URS' legitimate, nondiscriminatory reason for firing her was pretextual, we affirm.

## I.

We review *de novo* orders granting summary judgment, considering all the evidence and drawing all reasonable inferences in favor of the non-moving party. *See Knight v. Baptist Hosp. of Miami, Inc.*, 330 F.3d 1313, 1316 (11th Cir. 2003). To survive a motion for summary judgment, a party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). Speculation and conjecture cannot create a genuine issue of material fact. *See Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005).

Title VII prohibits employers from discriminating against their employees on the basis of sex. *See* 42 U.S.C. § 2000e-2(a)(1).[1] Title VII "[d]isparate treatment claims require proof of discriminatory intent either through direct or circumstantial evidence," *E.E.O.C. v. Joe's Stone Crab, Inc.*, 220 F.3d 1263, 1286 (11th Cir. 2000), and the plaintiff has the initial burden of proving a prima facie case of sex discrimination, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). If she does so, the burden shifts to the employer to rebut the presumption of discrimination by articulating a legitimate, nondiscriminatory reason for the adverse employment action. *See id.* Once the employer provides such a reason, the "plaintiff then has the ultimate burden of proving the reason to be a pretext for unlawful discrimination." *Joe's Stone Crab*, 220 F.3d at 1286.

To prove pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *See Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (quotation marks omitted). The "plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute [her] business judgment for that of the employer." *Chapman v. AI Transp.*, 229 F.3d

---

[1] "Because the FCRA is modeled after Title VII, and claims brought under it are analyzed under the same framework," we do not need to discuss Ms. Chavez's FCRA claim separately. *See Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1271 (11th Cir. 2010).

1012, 1030 (11th Cir. 2000). So long as the employer's "reason is one that might motivate a reasonable employer, [the] employee must meet that reason head on and rebut it, and [she] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Rebuttal requires "significant probative" evidence of pretext; conclusory allegations alone are insufficient. *See Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996).

## II.

Although Ms. Chavez satisfied her initial burden of proving a prima facie case of sex discrimination, URS also satisfied its burden of articulating a legitimate, nondiscriminatory reason for firing her: a reduction-in-force due to budget cuts. The floor therefore shifts back to Ms. Chavez, who must show that a genuine issue of material fact exists as to whether URS's proffered reason was merely a pretext for discrimination. She has not done so.

Federal courts will not "second-guess the business judgment of employers." *See Combs*, 106 F.3d at 1543. During a reduction-in-force, "competent employees who in more prosperous times would continue and flourish at a company may nevertheless have to be fired." *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1083 (11th Cir. 1990) (quotation marks omitted). Whether an employment decision was "prudent or fair" is irrelevant, *see Damon v. Fleming Supermarkets of Fla., Inc.*, 196 F.3d 1354, 1361 (11th Cir. 1999), because an "employer is free to choose

4

whatever means it wants, so long as it is not discriminatory, in responding to bad economic conditions," *Beaver v. Rayonier, Inc.*, 200 F.3d 723, 728 (11th Cir. 1999).

The record here supports URS' assertion that it fired Ms. Chavez as part of a budget-related reduction of its workforce. In fact, the record indicates that Ms. Chavez knew about the budget shortfalls URS was facing even while she was still employed there. Although she disagrees with the size and type of cuts URS chose to make, Ms. Chavez admits that she felt the budgetary squeeze as a URS employee: she reduced costs in her department by not ordering office supplies, and she discussed with her direct supervisor the possibility of consolidating subordinate positions. She also acknowledges that eliminating full-time employees was the only remaining way her department could save money.

The reality is that while Ms. Chavez may have flourished as a branch manager in more prosperous times, she was not so fortunate when things got lean. *See Earley*, 907 F.2d at 1083. URS chose to deal with a difficult business climate by firing her and letting Mr. Sweeney, an employee who shared many managerial duties with her but received a lower salary, absorb her responsibilities. Although Ms. Chavez questions the prudence and fairness of this decision, we "do not sit as a super-personnel department" to correct it. *See Alvarez*, 610 F.3d at 1266 (quotation marks omitted). URS can run its business however it wants as long as it

5

does not discriminate. *See Beaver*, 200 F.3d at 728.

## A.

In an effort to prove that URS' budget cuts were not the real reason she was fired, Ms. Chavez points to evidence that Mr. Bush treated her less kindly than he did her male colleagues. She notes that Mr. Bush never engaged in casual conversation with her and that he berated her in front of co-workers when he disliked her opinion. She argues that he ultimately terminated her because he had a "vendetta" against her.

Instead of demonstrating that Mr. Bush preferred his male employees to his female ones, though, the record in fact shows that Mr. Bush had favored employees of both sexes. It also shows that he treated certain male employees less favorably than certain female employees. At most, the record reveals that Mr. Bush played favorites but that his favoritism was not gender-based. Although the record indicates that Mr. Bush was not as cordial to Mr. Chavez as he was to some of her colleagues, and that he may not have liked her personally, it stops far short of supporting her contention that he had a vendetta against her.

But even if Mr. Bush's interactions with Ms. Chavez do amount to a vendetta, his personal animosity toward her does not equal sex discrimination. An employer's subjective reason for its business decision can also be a legally sufficient, legitimate, nondiscriminatory reason. *See Chapman*, 229 F.3d at 1033–

6

34. This is true even where the subjective reason is individualized dislike: "Personal animosity is not the equivalent of sex discrimination . . . . The plaintiff cannot turn a personal feud into a sex discrimination case by accusation." *McCollum v. Bolger*, 794 F.2d 602, 610 (11th Cir. 1986). Mr. Bush was therefore free to fire Ms. Chavez because he disliked her, or because he would "miss [her] the least," as long as he did not fire her for being female. *See Allison v. W. Union Tel. Co.*, 680 F.2d 1318, 1322 (11th Cir. 1982).

**B.**

Ms. Chavez also attempts to prove pretext by offering us statistics indicating that URS fired a higher percentage of female branch managers (fifty percent, or two of four) than male branch managers (approximately five percent, or one of twenty-two). But a plaintiff cannot show disparate treatment by merely citing statistics. *See Burke-Fowler v. Orange Cnty.*, 447 F.3d 1319, 1325 (11th Cir. 2006). Without any analytical foundation, statistical evidence is "virtually meaningless" and cannot be probative of pretext. *See Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004). Indeed, while discriminatory-looking statistics may satisfy a plaintiff's prima facie burden, they do not support an inference of intentional sex discrimination if the data can be explained in a plausible, gender-neutral fashion. *See Watkins v. Sverdrup Tech., Inc.*, 153 F.3d 1308, 1316 (11th Cir. 1998).

7

Viewing Ms. Chavez's data in context, the statistics she relies on do not paint an accurate portrait of the reduction-in-force. URS laid off roughly the same number of male managers as female managers. The statistics do not reflect this fact because URS started with significantly more male managers; thus, losing one brought down the percentage of males only slightly, while losing a similar number of female managers reduced the percentage of women by half.  Overall, however, far more men than women—seven of nine—lost their jobs. Women made up just twenty-two percent of the total layoffs, which came from many departments and addressed both budgetary issues and business-related refocusing. In fact, at the same time as the reduction-in-force, Ms. Chavez's male supervisor was transferred to a different department because URS was shifting focus away from the work their department did. As a part of the bigger picture, then, the data underlying Ms. Chavez's statistics do not support an inference of sex discrimination.

## C.

In her final attempt to show pretext, Ms. Chavez argues that URS retained Mr. Sweeney, and eventually promoted him to her job, even though he was less qualified. A plaintiff with superior qualifications cannot show pretext unless the "disparities in qualifications [are] of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the [employee retained] over the plaintiff for the job in question." *See Cooper v.*

8

*Southern Co.*, 390 F.3d 695, 732 (11th Cir. 2004) (quotation marks and citation omitted). It does not matter "whom we would determine to be better qualified for the job." *Id.*

Although Ms. Chavez holds bachelor's and master's degrees, and Mr. Sweeney has only an associate's degree, their educational disparities are not weighty or significant enough that no reasonable person could have chosen Mr. Sweeney. He performed many of the same managerial functions as Ms. Chavez and did so at a lower salary. It is not unreasonable that URS would decide, in a down market, to keep a lower-paid employee who it already knew was capable of doing most, if not all, of her tasks. That Mr. Sweeney is male does not transform a business decision, which we will not second-guess, into discrimination. *See Combs*, 106 F.3d at 1543.

## III.

Ms. Chavez has not shown that URS' proffered reason for firing her—a reduction-in-force due to budget cuts—was merely a pretext for sex discrimination. She obviously disagrees with the wisdom of URS' business decision to let her go, but unwise as it may have been, the decision was URS' to make. Because URS provided a legitimate, nondiscriminatory reason for firing Ms. Chavez, the district court's grant of summary judgment in favor of URS is affirmed.

**AFFIRMED.**

9