**Juan Carlos PEREZ–GARCIA,
et al., Plaintiffs,**

v.

**PUERTO RICO PORTS AUTHORITY,
et al., Defendants,**

v.

**Kingfisher Air Services, Inc., et al.,
Third–Party Defendants.**

**Civil No. 08–1448 (GAG).**

United States District Court,
D. Puerto Rico.

July 9, 2012.

---

Jose Luis Ubarri–Garcia, David W. Roman, Ubarri & Roman, San Juan, PR, for Plaintiff.

PHV Louis R. Martinez, PHV Richard Ritorto, Martinez & Ritorto PC, New York, NY, Jaime E. Morales–Morales, Morales Morales Law Offices, Jaime F. Agrait–Llado, Agrait Llado Law Office, Ramon L. Walker–Merino, Walker Merino Law Office, San Juan, PR, PHV Jeffrey F. Clement, Hoff & Herran, Chicago, IL, for Defendants.

Juan M. Frontera–Suau, Ufret & Frontera Law Firm, San Juan, PR, PHV James S. Usich, Law Firm James S. Usich, P.A., Palmetto Bay, FL.

Herman W. Colberg, Herman W. Colberg Law Office, Israel O. Alicea–Luciano, Harold D. Vicente–Colon, Vicente & Cuebas, Ivan R. Fernandez–Vallejo, Rodriguez & Fernandez, San Juan, PR, Cristina A. Fernandez–Rodriguez, Totti & Rodriguez Diaz, Hato Rey, PR, for Third–Party Defendants.

## ORDER

GUSTAVO A. GELPÍ, District Judge.

Juan Carlos Perez–Garcia ("Plaintiff") filed the present action against Puerto Rico Ports Authority ("PRPA"), Caribbean Airport Facilities, Inc. ("CAF"), and their respective insurance companies,[1] for damages sustained when a golf cart fell from the second level at the San Juan International Airport ("SJU Airport"). (*See* Docket No. 388). Plaintiff was being transported to Kingfisher Air Services' ("KF") hangar facility at the SJU Airport on May 2, 2006, when the golf cart fell from a vertical reciprocating conveyor ("VRC") on the second floor to the first floor. After Plaintiff filed his complaint, CAF filed a third-party complaint against KF, KF's insurance company Antilles Insurance Company ("Antilles"), Club Car LLC ("Club Car") and Bayamon Golf Cars ("Bayamon Golf") seeking contribution and/or indemnity from these defendants in the event CAF Defendants were found liable in the original action.

The present matter involves two motions *in limine*, one submitted by Plaintiffs (Docket No. 637) and one submitted by Club Car (Docket No. 646), both seeking to exclude the expert testimony of Rick Galdos ("Galdos"). Plaintiffs argue that certain portions of Galdos' testimony should be excluded because Galdos fails to substantiate his opinions with factual evidence or scientific principles. Club Car generally argues that Galdos does not qualify as an expert as required by Rule 702 and *Daubert v. Merrell Dow Pharm.*, 509 U.S. 579, 597, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993), or that his testimony would be unfairly prejudicial under Rule 403. CAF and PRPA opposed both motions at Docket Nos. 669 and 678 respectively. For the following reasons, the court **GRANTS** Plaintiffs' motion at Docket No. 637 and **GRANTS** Club Car's motion at Docket No. 646.

## I. Legal Standard

The admission of expert testimony is governed by Federal Rule of Evidence 702. That rule provides that:

---

1. ACE Property and Casualty Insurance Company ("ACE") and Chartis Insurance Company—Puerto Rico ("Chartis").

[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. FED.R.EVID. 702.

■ The trial court acts as a gate-keeper as the judge must ensure an expert's testimony is both relevant and is based on a reliable foundation. *See Daubert*, 509 U.S. at 597, 113 S.Ct. 2786 (1993); *U.S. v. Mooney*, 315 F.3d 54, 62 (1st Cir.2002).

■ The *Daubert* Court identified four factors that may assist the trial court in determining whether or not scientific expert testimony was reliable: "(1) whether the theory or technique can be and has been tested; (2) whether the technique has been subject to peer review and publication; (3) the technique's known or potential rate of error; and (4) the level of the theory or technique's acceptance within the relevant discipline." *Mooney*, 315 F.3d at 62 (citing *Daubert*, 509 U.S. at 593–94, 113 S.Ct. 2786). These factors were later held to apply to all expert testimony, not just scientific testimony. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147, 119 S.Ct. 1167, 143 L.Ed.2d 238 (1999). The factors are not a checklist for the trial judge to follow, but rather the inquiry is a flexible one, allowing the trial judge to determine and adapt these factors to fit the particular case at bar. *See Kumho*, 526 U.S. at 150, 119 S.Ct. 1167; *Milward v. Acuity Specialty Prods. Grp., Inc.*, 639 F.3d 11, 15–16 (1st Cir.2011). "Proponents ... do not have to demonstrate that the assessments of their experts are correct, only that their opinions are reliable." *Rivera–Cruz v. Latimer, Biaggi, Rachid & Godreau, LLP*, 2008 WL 2446331 at *2 (D.P.R. June 16, 2008) (citing *Ruiz–Troche v. Pepsi Cola of P.R. Bottling Co.*, 161 F.3d 77, 85 (1st Cir.1998)). While the general focus of this inquiry is the principles and methodology relied upon by the expert, the court may consider the congruity of the data and the opinion proffered by the expert. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S.Ct. 512, 139 L.Ed.2d 508 (1997) (holding a court may conclude there is too great an analytical gap between data and the opinion proffered); *Ruiz–Troche*, 161 F.3d at 81.

## II. Legal Analysis

Club Car's motion primarily focuses on whether Galdos is qualified as an expert to offer testimony in this case and will be discussed in Section A. Club Car's and Plaintiffs' arguments overlap to the extent that the parties argue the offered testimony is unnecessary in this case and that Galdos' conclusions run afoul of Rule 704. That analysis will be discussed Section B.

### A. Club Car's Motion to Exclude Galdos

■ CAF and PRPA offer Galdos as an expert in mechanical engineering and accident reconstruction. It cannot be questioned that Galdos is a highly educated engineer, as he received his B.A. and M.A. in mechanical engineering, as well as a Ph.D in engineering mechanics. (*See* 637–3.) Since 1984, he has been employed in the field of engineering. (*See id.*) Based on his education and experience, Galdos is qualified as an expert in mechanical engineering.

Much of this experience also serves to build his credentials as an accident reconstructionist. Galdos began as an accident

reconstructionist by providing engineering services to those reconstructing accident scenes, then later became president of an engineering consulting firm that provided these services in 1994. (*See id.*) Based on his education, experience and training, Galdos is qualified to give expert testimony in the areas of mechanical engineering and accident reconstruction. However, as discussed below, Galdos' opinions and conclusions often overstep these areas and attempt to inform the jury as to the correct legal conclusion.

### B. Plaintiffs' Objections to Galdos' Opinions

Plaintiffs move to exclude all of Galdos' testimony by pointing to several opinions, or portions thereof, stated by Galdos in his expert report. As previously discussed, Galdos' opinions must be based on his expertise as an engineer or accident reconstructionist. Defining the expertise of an accident reconstructionist is particularly difficult and the opinions regarding the scope of this expertise vary amongst practitioners. By the very nature of the name, an accident reconstructionist focuses on reconstructing an accident scene. As stated in PRPA's brief, Galdos believes an accident reconstructionist should "investigate an accident, inspect the equipment involved, perform tests as necessary, consider the testimonies, apply an analysis of all factors based on education, experience and background, and then to develop an opinion as to the causes or factors in an accident." (*See* Docket No. 678 at 9.) The court substantially agrees, however notes

that an accident reconstructionist should be confined to formulating opinions based on the data reviewed and presented, rather than attempting to make legal conclusions.

■■■■ Experts enjoy wide latitude to opine within their area of expertise. *See Chadwick v. WellPoint, Inc.*, 561 F.3d 38, 48 (1st Cir.2009) (citing *Daubert*, 509 U.S. at 592, 113 S.Ct. 2786). Rule 704 has lifted the bar against opinions that embrace the ultimate issue. *See* FED.R.EVID. 704.[2] However, an expert is not given 'carte blanche' to substitute his own views on matters for the jury. *See Dinco v. Dylex Ltd.*, 111 F.3d 964, 973 (1st Cir.1997). The proper role of an expert is to provide his or her factual conclusions in order to help assist the jury, who can then accept or reject the factual conclusion. *See Nieves–Villanueva v. Soto–Rivera*, 133 F.3d 92, 100 (1st Cir.1997). This distinction is not always clear and cannot always be anticipated prior to trial. Trial courts have often struggled with properly applying this rule. *See e.g., Hermitage Indus. v. Schwerman Trucking Co.*, 814 F.Supp. 484, 485 (D.S.C.1993) (holding expert testimony in form of legal conclusion inadmissible).

■■■ The Advisory Committee note accompanying Rule 704 provides some guidance to this issue. The note clearly states, "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions." FED.R.EVID. 704 advisory committee note. Opinions that merely tell the jury what result to reach should be

---

2. Rule 704 states:
   (a) Except as provided in subdivision (b), testimony in the form of an opinion or inference otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of fact.
   (b) No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are matters for the trier of fact alone.

deemed inadmissible under Rules 701, 702 and 403. *See id.* As an exemplar, the note demonstrates the distinction by using two questions regarding a testator's capacity to make a will. *See id.* In the first question, which should excluded, an expert is simply asked if T had the capacity to make a will. The second, which is allowed, asks the expert if T had "sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?" *See id.* It is clear the first question simply asks the expert reach a legal conclusion as opposed to a conclusion built upon the facts of the case, that does not directly answer the legal question for the jury. Such questions and responses continue to be barred. *See Nieves–Villanueva,* 133 F.3d at 100.

■ In terms of an accident reconstructionist, the opinions should be closely fitted to the information and data discovered through the course of reconstructing the accident. Conclusions may be disregarded when they are substantiated by the *ipse dixit* of the expert. *See Ruiz–Troche,* 161 F.3d at 81. As discussed below, the court does not find there is a close fit between the data relied upon by Galdos and his conclusions.

### 1. Preliminary Opinion

■ Galdos' Preliminary Opinion discusses how Jackson and/or Plaintiff would have reacted had the VRC donned a sign, warning all passengers that the VRC was not to be used to transport people. (*See* 637–1 at 8.) In sum, Galdos believes the existence of a warning sign would not have changed the behavior of Jackson or Plaintiff. (*See id.*) To reach this conclusion, Galdos states that Plaintiff had every bit of information he needed to be able to evaluate the dangerousness of situation.

■ Galdos' opinion relies upon the observations of Jackson and Plaintiff to reach this opinion. There is nothing of a technical or scientific nature regarding his opinion; he merely states that the information known to Jackson and Plaintiff should be sufficient to alert the two of the potential danger. As no scientific knowledge is being applied to make this opinion, it is unnecessary for the witness to be qualified as an expert. Certainly Galdos did not employ any expert knowledge pertaining to mechanical engineering to arrive at this opinion. Neither did Galdos rely upon any expertise in accident reconstruction, as this opinion does not require him to reconstruct the accident scene. To form this opinion, Galdos merely needs to restate the facts of previous witnesses, no expertise is required. Alternatively, lay witnesses are limited to testifying to their personal knowledge and it is untenable to argue that Galdos has personal knowledge of how Jackson and Plaintiff perceived the VRC on the day in question. Therefore, the court **GRANTS** Plaintiffs' motion as to Galdos' Preliminary Opinion.

### 2. Opinion No. 3

■ In this opinion Galdos states Plaintiff substantially contributed to his own accident. (*See* Docket No. 637–1 at 11.) Galdos states the evidence conclusively indicates Plaintiff acted recklessly and placed himself in a dangerous situation. Galdos states Plaintiff's injuries were mostly caused by his own imprudence. (*See id.*) These conclusions, especially pertaining to the recklessness of Plaintiff's actions is inadmissible. Much of the information leading to this conclusion could be admissible. However, Galdos is testifying as an accident reconstructionist and engineer. The mental state of Plaintiff does not fall within either one of Galdos' areas of expertise. Therefore, the

court **GRANTS** Plaintiffs' motion and these conclusions shall be excluded.

### 3. Opinion No. 7

██ Opinion No. 7 is similar to the Preliminary Opinion and Opinion No. 3 in that Galdos concludes the dangerousness of the situation was clearly obvious to Plaintiff. (*See* Docket No. 637–1 at 12.) In stating that Plaintiff understood the danger of heights he states, "The danger about heights is something so basic and evident that, anyone, even children know about and protect themselves from, especially a pilot." *Id.* In arriving at the conclusion that a warning would not have changed Plaintiff's behavior, Galdos claims Plaintiff knew about the danger and accepted it. Galdos does not address whether Plaintiff knew the VRC was supposed to carry materials rather than people. This opinion essentially discusses the information Plaintiff and Jackson had prior to entering the VRC.[3] No expert opinion is required to testify as to what these participants knew prior to entering the VRC and any conclusions regarding whether Plaintiff accepted the risks involved is a question for the jury. As this testimony does not need an expert, and Galdos has no personal knowledge, the court **GRANTS** Plaintiffs' motion to exclude this conclusion.

### 4. Opinion No. 9

██ Galdos dons his engineering hat in order to conclude the lack of chains in the VRC was not a contributing factor to inci-

dent. In pertinent part, the opinion states:

> I have considered the weight and movements of the golf car against those of the chains that Giant Lift provided for the VRC involved in the accident, and I have found that even if the chains in question would have been placed in the VRC, it is unlikely that those chains would have prevented the vehicle from going off the edge of the VRC. As the chains are not intended to prevent all objects from falling off the platform and are not intended, not designed and are unlikely to stop the movement of an energized golf car.

(*See* Docket No. 637–1 at 13.) Galdos performed no tests on the chains and according to his expert report did not review the report of Bryan Durig who did test the strength of the chains.[4] (*See* Docket No. 637–1.) There is a complete lack of data to form the basis of this opinion and is exactly the type of testimony the Court cautioned against in *Joiner.* Therefore, the court **GRANTS** Plaintiffs' motion to exclude this opinion.

### 5. Opinion No. 10

██ Concisely stated, Opinion No. 10 concludes that for purposes of this accident, it did not matter whether the control panel was placed inside or outside the VRC. (*See* Docket No. 637 at 19.) Considering this opinion as part of Galdos' accident reconstructionist testimony, the court can see the value of refuting Plaintiffs' argument that the control panel should have been on the inside. However, the

---

**3.** It should also be noted that the conclusion discusses what Jackson and Plaintiff knew interchangeably. After listing what Jackson knew and Plaintiff knew separately, Galdos concludes that Plaintiff must have known the dangerousness of the situation. It is unclear to the court whether Galdos' opinion is based on what Plaintiff knew prior to entering the

VRC or whether Galdos' opinion assumes Jackson shared the information he knew with Plaintiff.

**4.** Bryan Durig's testimony pertaining to the strength of the chains has been excluded in a separate ruling from the court at Docket No. 744.

court cannot agree that it is necessary for an expert to testify to this proposition. It seems well within the abilities of the jury to understand that Jackson would have to stand up to press the down button on the control panel regardless of the location of the control panel. No expert is necessary to convey this idea to the jury. Therefore, the court **GRANTS** Plaintiffs' motion to exclude this opinion.

### 6. Opinion No. 11

■ Plaintiffs' objection to this opinion is that Galdos relies upon speculation and conjecture in order to invent circumstances in which the Plaintiff pressed the accelerator. (*See* Docket No. 637 at 21.) In order to reach these opinions, Galdos relies entirely upon the report of David Renfroe ("Renfroe") and wholly adopts the conclusions contained within Renfroe's report. Renfroe's testimony in this regard was allowed by the court at Docket No. 745. Therefore, allowing Galdos to testify as to the same conclusions reached by Renfroe would simply allow cumulative evidence to reach the jury. Such testimony is within the court's discretion to exclude pursuant to Rule 403. In this case, the court chooses to exclude this evidence and **GRANTS** Plaintiffs' motion.

### 7. Opinion No. 15

■ In describing the possibility that the contractual relationship between PRPA and CAF may lead to PRPA being liable, Galdos states, "This seems to be an area for attorneys or the court." Galdos is correct. As he is neither an attorney, nor a court officer, his opinions regarding the existence of any contractual obligation shall be excluded. The court **GRANTS** Plaintiffs' motion to exclude this opinion.

### 8. Final Conclusions

■ Throughout his final conclusion, Galdos sprinkles in his theories as to which parties bear responsibility for this incident. As many of his opinions underlying this ultimate conclusion have been excluded by the court, it is logical that the court **GRANTS** Plaintiffs' motion to exclude this final opinion as well. For the reasons state above, the final conclusion exceeds the scope of Galdos' expertise and relies on an opinions previously excluded.

### III. Conclusion

In excluding the majority of Galdos' testimony, the court has not run a fine tooth comb through all of his opinions. But as the major pieces of Galdos' testimony have been excluded, only basic facts and a few opinions that can be elicited from other witnesses remain. As such the court will exclude Galdos as an expert witness in this case. For the reasons set forth above, the court **GRANTS** Plaintiffs' motion at Docket No. 637 and Club Car's motion at Docket No. 646.

**SO ORDERED.**