**Nicole V. KING and Jennifer S. Tahan, Plaintiffs,**

v.

**FERGUSON ENTERPRISES, INC., Defendant.**

**Civil Action No. 1:11–cv–1901–TCB.**

United States District Court, N.D. Georgia, Atlanta Division.

Sept. 17, 2013.

Cheryl Barnes Legare, Edward D. Buckley, Jaime Lyn Duguay, Steven Eric Wolfe, Buckley & Klein, LLP, Atlanta, GA, for Plaintiffs.

Ronald G. Polly, Jr., Willie C. Ellis, Jr., Hawkins Parnell Thackston & Young, LLP, Atlanta, GA, for Defendant.

## ORDER

TIMOTHY C. BATTEN, SR., District Judge.

This Title VII case is before the Court on Defendant Ferguson Enterprises, Inc.'s objections[1] [80] to the Magistrate Judge's Report and Recommendation [77], which recommends denying Ferguson's motion for summary judgment [48]. Also before the Court is Plaintiffs Nicole King and Jennifer Tahan's response to Ferguson's objections [81]. For the reasons below, the R & R is adopted in part, rejected in part, and Ferguson's motion of summary judgment is granted.

## I. Standard of Review

After conducting a "careful and complete" review of a magistrate judge's findings and recommendations, a district judge may accept, reject or modify a magistrate judge's R & R. *Williams v. Wainwright*, 681 F.2d 732, 732 (11th Cir.1982) (per curiam) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 408 (5th Cir.1982) (en banc)) (internal quotation mark omitted).[2]

---

1. Ferguson's motion for leave to file excess pages [79], while unnecessary, *cf.* L.R. 7.1(D), is GRANTED.

2. The Eleventh Circuit has adopted as binding precedent all Fifth Circuit decisions issued before October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc). Additionally, all decisions issued after that date "by a non-unit panel of the Former Fifth, the full en banc court of the Former Fifth, or Unit B panel of the Former Fifth Circuit" are binding precedent absent a

A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district judge must "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir.1990). Those portions of an R & R to which an objection is not asserted may be reviewed for clear error. *United States v. Slay*, 714 F.2d 1093, 1095 (11th Cir.1983).

Here, the R & R primarily rests on the following findings and conclusions:

*First,* that despite their argument to the contrary, King and Tahan brought a gender-plus discrimination claim, [R & R at 17–18];

*Second,* that to succeed on their gender-plus claim under the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 [93 S.Ct. 1817, 36 L.Ed.2d 668] (1973), King and Tahan must establish that they were replaced by a similarly situated comparator: namely, a male with similar responsibilities for young children—something they have not done,[3] [R & R at 21, 28];

*Third,* that in *Smith v. Lockheed—Martin Corp.*, 644 F.3d 1321 (11th Cir.2011), the Eleventh Circuit recognized an "Alternative Framework" that "effectively moots" the need for Title VII plaintiffs to establish a similarly situated comparator where they present circumstantial evidence sufficient to establish a triable issue regarding their employer's discriminatory intent, [R & R at 19, 23–24];

*Fourth,* that King and Tahan have presented sufficient evidence to allow a jury to reasonably infer that Ferguson terminated their employment based on sex under *Smith*'s Alternative Framework, [R & R at 30];

*Fifth,* that King and Tahan have raised a genuine issue of material fact regarding whether each of the eight nondiscriminatory reasons that Ferguson proffers for their termination is pretextual, [R & R at 40]; and

*Sixth,* that only King has a claim for pregnancy discrimination, which survives for the same reasons as her gender-plus claim, [R & R at 41–42].

Ferguson objects to the magistrate judge's consideration of the Alternative Framework. It argues that the magistrate judge should have ended his analysis when he concluded that King and Tahan failed to set forth a prima facie case under the *McDonnell Douglas* framework. Alternatively, Ferguson objects to the magistrate judge's application of the Alternative Framework. Ferguson also objects to the magistrate judge's conclusion that King and Tahan successfully rebutted all eight of the nondiscriminatory reasons it proffered for terminating them. Lastly, and for the same reasons, Ferguson objects to the magistrate judge's conclusion that King's pregnancy-discrimination claim survives.

King and Tahan did not object to the R & R. But in their response to Ferguson's objections, they implicitly renew the argument that their claim is not for gender-plus discrimination. They also argue that their claim survives summary judgment

---

contrary en banc Eleventh Circuit decision. *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33, 34 (11th Cir.1982); *see also United States v. Schultz*, 565 F.3d 1353, 1361 n. 4 (11th Cir. 2009) (discussing the continuing validity of *Nettles* ).

**3.** King and Tahan did not object to this finding; thus, after reviewing it for clear error and finding none, the Court ADOPTS it as its own.

whether or not they identified a similarly situated male comparator. As support, they rely on the so-called Alternative Framework of *Smith*, which, in their view, precludes summary judgment because sufficient circumstantial evidence exists to allow a reasonable jury to infer that Ferguson terminated them for unlawful reasons.

■ In short, the parties collectively dispute (whether explicitly or implicitly) each of the magistrate judge's principal findings and conclusions. While some objections were filed after the fourteen-day-objection deadline set by Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(B), this Court concludes that de novo review is appropriate for each principal finding and conclusion given their interrelated nature, the complexity of the issues, and the interests of justice. *Cf. Macort v. Prem, Inc.*, 208 Fed.Appx. 781, 784 (11th Cir.2006) (per curiam) (finding that most circuits agree that de novo review of a R & R is not *required* absent a timely filed objection).

## II. Background [4]

### A. The Hiring of King and Tahan

Ferguson Enterprises provides wholesale distribution and marketing of plumbing, heating and air conditioning, fitting, and valve products. In 2005–2006, Ferguson formed Atlanta HVAC. Although it had had a presence in Georgia for many years, this was its first stand-alone HVAC location in the state. At all times relevant here, Atlanta HVAC had two offices: a main office in Norcross and a satellite branch in Marietta.

Atlanta HVAC needed an operations manager.[5] In September 2006, the general manager, Joseph Rogers, contacted Jennifer Tahan about rejoining the company in this capacity.[6] She accepted and became the full-time operations manager for the main and satellite offices of Atlanta HVAC. In return, her compensation package included a $60,000 base salary, gas card, benefits, and an opportunity to earn a bonus.

When Tahan started in September 2006, however, Atlanta HVAC's business was slow. So she asked Rogers if on Mondays and Fridays she could work from home. He granted her request. But by mid–2007, Rogers suspected that she no longer wanted to work full time. In August, he inquired whether she would be interested in sharing the operations manager position and working part time. She was.

Rogers then contacted Nicole King about rejoining Ferguson[7] and working

---

4. In its objections, Ferguson does not challenge the magistrate judge's recitation of the procedural history or facts relevant to summary judgment, Parts I & III.A of the R & R. Nor do King and Tahan in their response. For this reason, the Court has reviewed them for clear error. Finding none, the Court ADOPTS the magistrate judge's finding that this issue is ripe for consideration. This version of the factual background and procedural history thus hews closely to those parts of the R & R. Unless otherwise cited, any facts other than those in the R & R are from the parties' responses to each other's statement of nontriable material facts [67, 71].

5. The operations manager handles non-sales-related functions, such as ordering office supplies, fixing leaks in the roof, reviewing monthly reports to check expense levels, handling claim backs, maintaining an affirmative action file and résumés that were submitted to the branch, invoicing, receiving, warranties, and customer credits.

6. Tahan had previously worked for two Ferguson plumbing branches in metro Atlanta, and from October 2003 until February 2006, she served as assistant operations manager of its Atlanta Plumbing Branch. During that time, Rogers and Tahan met and occasionally worked together.

part time as Atlanta HVAC's operations manager. King accepted and began splitting the operations manager position with Tahan in August 2007. With two part-time employees fulfilling the full-time responsibilities of operations manager, Ferguson increased the position's base salary from $60,000 to $75,000, splitting it equally between Tahan and King. Their work schedule was likewise split: Tahan worked Monday and Tuesday; King worked Wednesday and Thursday; and they alternated working Friday.[8]

## B. Changes in Management at Atlanta HVAC

In 2008, the economic downturn led to a steep decline in Atlanta HVAC's business. For example, Atlanta HVAC lost nearly $400,000 in fiscal year 2009. Like many businesses, Ferguson had to make tough decisions, including closing branch locations and reducing its workforce. At Atlanta HVAC, its changes included management. In October 2008, Rogers, who hired King and Tahan and implemented the job-share arrangement, was demoted from general manager to sales manager. In December of that year, the new general manager, Jonathan Wallace, arrived. A few months later, in May 2009, Ferguson replaced another rung of Atlanta HVAC's management ladder, terminating the district manager and consolidating his district. As a result, Ronald Bullington became the location's district manager.

More changes followed. Bullington did not believe that Atlanta HVAC's sales justified having both a sales and a general manager. Nor did he believe that having the former and current general manager, Rogers and Wallace, in the same location was a good idea. Thus, in July 2009 Bullington told Rogers that he had to leave Atlanta HVAC but that he would find him another job—which Bullington did. To remain with Ferguson, Rogers, a seventeen-year employee, accepted a statewide management position with Ferguson's plumbing division.[9]

## C. The End of King and Tahan's Employment at Atlanta HVAC

On August 4 and 5, 2009, Bullington made his first visit to Atlanta HVAC. During this visit, he and Wallace reviewed the branch's performance, including its staffing needs, financial performance, and plans for improvement. While there, Bullington met King, and they had a short conversation about her pregnancy. Bullington stated, "I see that you're pregnant," and asked, "when are you due?" He also spoke with Tahan during this visit; this conversation focused on her plans for King's upcoming maternity leave, and he told her that Wallace, the general manager, would not be helping with operations.

After this visit, Wallace emailed himself and Bullington a summary of notes from

---

7. Like Tahan, King had worked for Ferguson's Atlanta Plumbing Branch. She started with the company right out of college in 1997 and remained until 2006. During that time she spent almost three years as assistant operations manager and nearly as long as showroom manager.

8. While this was the generally agreed upon work schedule, during Tahan's maternity leave in January 2008, King worked with Rogers to cover Tahan's responsibilities.

9. While Rogers's base pay was not cut when he was demoted to sales manager in October 2008, his bonus potential was. In contrast, his July 2009 transfer to Ferguson's plumbing division resulted in a significant reduction in both: his base pay was cut about 15 percent, and his bonus potential was no longer based on an objective, goal-achievement formula but rather was at the discretion of his general manager. [48–3 at 15–20].

their meetings, specifically areas for improvement in each Atlanta HVAC location and a list of proposed staffing changes and reductions. The next day Wallace forwarded that email to Charlotte Murch, adding a note that he was doing so "to provide the context of several proposed employee terminations." Four days later, on August 10, Wallace emailed Bullington again; the subject line of this email states: "proposed staffing, Atlanta HVAC." In both emails to Bullington (August 5 and August 10),[10] Wallace suggests that King and Tahan's "New Position" will be "RIF" (reduction in force).

Almost three months passed, however, before Wallace meet with King and Tahan in early-October 2009 to discuss the elimination of their shared position. And while they were not terminated at that meeting, they were soon thereafter: Tahan on October 12, and on October 21 King was notified that her last day would be October 31.

Wallace replaced King and Tahan with a male, Chris Bair. He had worked at Atlanta HVAC's Marietta satellite branch since it opened, most recently as branch manager. While the operations manager position was a promotion, Bair received no additional compensation for taking on this new role; as a result, the base salary for the position dropped nearly $30,000.

### D. Procedural History

On June 9, 2011, King and Tahan filed this suit against their former employer, Ferguson, alleging sex-based discrimination under Title VII of the Civil Rights Act of 1964.[11] King also alleged pregnancy discrimination under the Pregnancy Dis-

crimination Act of 1978.[12] After Ferguson answered, discovery commenced; a year and a half later, Ferguson moved for summary judgment. After King and Tahan responded and Ferguson replied, the magistrate judge thoughtfully considered the parties' arguments and issued the R & R on July 16, 2013. He recommends denying Ferguson's motion for summary judgment. On August 5, 2013, Ferguson timely filed objections to the R & R, which King and Tahan responded to on August 22, 2013. This Court now considers whether summary judgment for Ferguson is appropriate.

### III. Legal Standard

Summary judgment is proper when no genuine issue about any material fact is present, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.,* 929 F.2d 604, 608 (11th Cir.1991).

The nonmovant is then required to "go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions and the like, desig-

---

**10.** Nothing in the record indicates whether Bullington responded to these emails.

**11.** Pub.L. No. 88–352, §§ 701–716, 78 Stat. 253,253–66 (codified as amended 42 U.S.C. §§ 2000e to 2000e–17).

**12.** Pub.L. No. 95–555, 92 Stat. 2076 (codified as amended 42 U.S.C. § 2000e(k)).

nating "specific facts showing that there is a genuine issue for trial." *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence" supporting the nonmovant's case is insufficient to defeat a motion for summary judgment. *Anderson,* 477 U.S. at 252, 106 S.Ct. 2505. And "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## IV. Sex Discrimination Under Title VII

██ Title VII makes it unlawful for employers to hire, fire, or otherwise discriminate against their employees regarding "compensation, terms, conditions, or privileges of employment" based on sex. 42 U.S.C. § 2000e–2(a)(1). One form of sex discrimination is so-called "sex plus" (or "gender plus");[13] that is, where an employer classifies employees based on sex *plus* a sex-neutral characteristic. *Willingham v. Macon Tel. Publ'g Co.,* 507 F.2d 1084, 1089 (5th Cir.1975) (en banc).[14] To succeed on a gender-plus claim, plaintiffs need not establish that their employer discriminated against the entire class of men or women; instead, they need only establish that their employer treated a subclass of men or women (those with the plus characteristic) differently from those without the plus characteristic. *See Chadwick v. WellPoint, Inc.,* 561 F.3d 38, 43 (1st Cir.2009). In other words, gender-plus plaintiffs "do[ ] not allege that an employer discriminated against a protected class as a whole, but rather that the employer disparately treated a subclass within a protected class." *Longariello v. Sch. Bd. of Monroe Cnty., Fla.,* 987 F.Supp. 1440, 1449 (S.D.Fla.1997) (quoting *Arnett v. Aspin,* 846 F.Supp. 1234, 1238 (E.D.Pa.1994)) (internal quotation mark omitted). Despite its name,[15] the ultimate question in these cases "is whether the employer took an adverse employment action *at least in part* because of an employee's sex." *Chadwick,* 561 F.3d at 43.

██ To state a Title VII claim, plaintiffs must allege that their employer's (or former employer's) actions were the product of "intentional discrimination on the basis of a prohibited factor." *Walker v. NationsBank of Fla., N.A.,* 53 F.3d 1548, 1557 (11th Cir.1995) (discussing *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 511, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993)). Intentional discrimination is a question of

13. This terminology first entered the legal lexicon via Chief Judge John Brown's dissent from denial of rehearing en banc in *Phillips v. Martin Marietta Corp.,* 416 F.2d 1257, 1260 (5th Cir.1969) (Brown, C.J., dissenting). 1 Barbara T. Lindemann et al., *Employment Discrimination Law* ch. 10, pt. VIII (5th ed.2012). As the Fifth Circuit later noted, the Supreme Court in *Phillips v. Martin Marietta Corp.,* 400 U.S. 542, 91 S.Ct. 496, 27 L.Ed.2d 613 (1971), "found expressly that 'sex plus' discrimination violates the Civil Rights Act." *Willingham v. Macon Tel. Publ'g Co.,* 507 F.2d 1084, 1089 (5th Cir.1975) (en banc).

14. As noted above, *see supra* note 2, decisions of the Fifth Circuit issued prior to October 1, 1981, are binding on this Court absent a contrary holding of the Supreme Court or Eleventh Circuit en banc.

15. As Barbara Lindemann points out, sex—or gender-plus discrimination does not mean that something more than sex discrimination has been alleged; rather, it refers to a type of sex discrimination—one where some members of the protected class have been discriminated against because of a *plus* characteristic, such as caretaking responsibilities for young children. 1 Lindemann et al., *supra* note 13, at ch. 10, pt. VIII.

fact that plaintiffs may establish through either direct or circumstantial evidence. *EEOC v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1272 (11th Cir.2002). Here, King and Tahan rely on circumstantial evidence.[16] But while their evidence may be circumstantial, they must nevertheless "establish facts adequate to permit an inference of discrimination." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir.1997). "Personal opinions and conclusory allegations, in the absence of supporting evidence, are insufficient to withstand summary judgment." *Chambers v. Walt Disney World Co.*, 132 F.Supp.2d 1356, 1365 (M.D.Fla. 2001) (citing *Holifield*, 115 F.3d at 1564 n. 6).

■ In the Eleventh Circuit, sex-discrimination claims based on circumstantial evidence are analyzed under the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and their progeny. *See Batey v. Stone*, 24 F.3d 1330, 1333 (11th Cir.1994) (holding that *McDonnell Douglas* and *Burdine* "provide the appropriate framework for evaluating claims of sex-based discrimination under Title VII").[17] The same analytical framework applies to pregnancy-discrimination claims. *Hamilton v. Southland Christian Sch.,*

*Inc.*, 680 F.3d 1316, 1320 (11th Cir.2012); *Holland v. Gee*, 677 F.3d 1047, 1054–55 (11th Cir.2012); *Armindo v. Padlocker, Inc.*, 209 F.3d 1319, 1320 (11th Cir.2000).

Under the *McDonnell Douglas* burden-shifting framework, plaintiffs must first establish a prima facie case of discrimination. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. Doing so creates a rebuttable presumption of unlawful discrimination. *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 714, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). Once established, the burden shifts to the employer to rebut the presumption "by producing evidence that its action was taken for some legitimate, non-discriminatory reason." *Joe's Stone Crabs*, 296 F.3d at 1272. If the employer does, the presumption is rebutted, and the inquiry "proceeds to a new level of specificity," where the plaintiff bears the burden of showing that the proffered reason is just pretext for unlawful discrimination. *Burdine*, 450 U.S. at 255–56, 101 S.Ct. 1089. While the burden of production shifts back and forth, the burden of persuasion always rests with the Title VII plaintiff. *Id.* at 253, 101 S.Ct. 1089; *see also Ross v. Jefferson Cnty. Dep't of Health*, 701 F.3d 655, 661 (11th Cir.2012).

■ The *McDonnell Douglas* burden-shifting framework, however, is "intended to progressively ... sharpen the

16. Before the magistrate judge, King and Tahan argued that they presented "direct evidence" of sex discrimination. The magistrate judge rejected this argument, concluding that the evidence they marshaled fell well short of legal standard for "direct evidence" in the Title VII context. Since neither party objects to this conclusion, the Court has reviewed it for clear error. Finding none, the Court ADOPTS the R & R's findings and conclusions on this issue as its own.

17. The Eleventh Circuit has applied this standard to a variety of sex-discrimination claims.

*E.g., Underwood v. Perry Cnty. Comm'n*, 431 F.3d 788, 794 (11th Cir.2005) (failure to hire); *Ledbetter v. Goodyear Tire & Rubber Co.*, 421 F.3d 1169, 1185 (11th Cir.2005) (disparate pay); *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir.2004) (failure to promote); *see also Johnson v. Atlanta Indep. Sch. Sys.*, 137 Fed.Appx. 311, 313 (11th Cir.2005) (applying the *McDonnell Douglas* burden-shifting framework to both age—and sex-discrimination claims (citing *Chapman v. AI Transport*, 229 F.3d 1012, 1024 (11th Cir. 2000) (en banc))).

inquiry into the elusive factual question of intentional discrimination." *Burdine*, 450 U.S. at 255 n. 8, 101 S.Ct. 1089; *Holland*, 677 F.3d at 1055. It does not change the ultimate question of "whether the plaintiff was the victim of intentional discrimination." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, where the employer presents legitimate, nondiscriminatory reasons for its decision, the plaintiff's burden under the *McDonnell Douglas* analytical framework—rebutting the employer's proffered reasons—"merges with the ultimate burden of persuading the court that [the plaintiff] has been the victim of intentional discrimination." *Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. And for purposes of summary judgment, "the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Smith v. Lockheed—Martin Corp.*, 644 F.3d 1321, 1326 (11th Cir.2011). If so, then summary judgment is precluded. *Id.*

█ Summary judgment for employers is not rare in employment-discrimination cases. *See Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990). Indeed, where plaintiffs present evidence that "is merely colorable or is not significantly probative," summary judgment should be granted. *Id.* at 1080 (emphasis omitted). Additionally, a plaintiff's conclusory, uncorroborated allegations in an affidavit or deposition do not create an issue of fact for trial sufficient to defeat a well-supported motion for summary judgment. *See id.* at 1081. Further, if plaintiffs fail to prove an essential element of their case, then all other facts are rendered immaterial, and the court is required to grant the motion for summary judgment. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

Here, therefore, to survive summary judgment under the *McDonnell Douglas* analytical framework, King and Tahan must (1) establish a prima facie case of discrimination and (2) present evidence that creates an issue of fact as to whether each reason offered by Ferguson for their termination is pretextual and whether discrimination is the true reason.[18] *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089; *Reeves*, 530 U.S. at 146–47, 120 S.Ct. 2097 (stating that "[i]t is not enough ... to *dis* believe the employer; the fact finder must *believe* the plaintiff's explanation of intentional discrimination" (alterations in original) (quoting *Hicks*, 509 U.S. at 519, 113 S.Ct. 2742) (internal quotation mark omitted)); *see also Chapman*, 229 F.3d at 1024–25 (If "the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.").

## V. Discussion

### A. Classifying King and Tahan's Title VII Claims

#### 1. King and Tahan's Claims for Sex Discrimination

█ The magistrate judge determined that King and Tahan's complaint alleges gender-plus discrimination. In their response to Ferguson's objections, King and

---

**18.** The magistrate judge found that Ferguson's proffered reasons met the light burden of providing a legitimate, nondiscriminatory reason for terminating King and Tahan. [R & R at 35]. Since neither party objected to this finding, the Court's review is for clear error. Finding none, the Court therefore ADOPTS the magistrate judge's finding on this issue as its own.

Tahan renew their argument against this classification. After reviewing this issue de novo, the Court finds that King and Tahan's allegations constitute gender-plus discrimination for the reasons set forth in the R & R.

As the magistrate judge found, King and Tahan's complaint and briefing establishes that they allege gender-plus discrimination. For example, the complaint alleges that "Ferguson knowingly and intentionally discriminated against [King and Tahan] on account of their sex and because of their care giving responsibilities." The complaint also alleges that they were terminated "because of Ms. King's and Ms. Tahan's care giving responsibilities for their young children." Moreover, in their brief they assert that Wallace "routinely comment[ed] on [their status] as 'young mothers'" and "created an underlying theme that [they] were 'mother[s], caregiver[s], had children of . . . young age, which was different from most everyone else in the branch.'" As a result, Tahan believed that these comments "put them at a disadvantage." [81 at 7–8].[19] Taken together, it is clear that count 1 of the complaint ("Sex Discrimination in Violation of Title VII") states a claim for gender-plus discrimination, where the *plus* factor is, as the magistrate judge found, caretaking responsibility for young children.

### 2. King's Claim for Pregnancy Discrimination

Neither party contests the magistrate judge's conclusion that only King can bring a claim for pregnancy discrimination. As a result, the Court's review is for clear error. Finding none, the Court ADOPTS the magistrate judge's findings and conclusions on this issue as its own.

\* \* \*

Whether King and Tahan state a claim for gender-plus or traditional sex-discrimination makes no analytical difference. Under either classification, the basis for Ferguson's alleged discriminatory conduct is sex (or gender). Gender-plus discrimination is sex discrimination. Thus,

### B. Establishing a Prima Facie Case of Discrimination Under the *McDonnell Douglas* Burden–Shifting Framework

The parties disagree about whether a prima facie case of gender-plus discrimination requires King and Tahan to identify a similarly situated comparator—a male with caretaking responsibilities for young children. Ferguson argues that King and Tahan cannot establish a prima facie case without making such a showing. King and Tahan argue that they can establish a prima facie case by showing that "[they] (1) [were] a member of a protected class, (2) [were] qualified for the job, (3) suffered an adverse employment action, and (4) [were] replaced by someone outside of the protected class." [81 at 5 (quoting *Cuddeback v. Fla. Bd. of Educ.*, 381 F.3d 1230, 1236 (11th Cir.2004) (alterations in brief))]. In their view, the comparator requirement of *Cuddeback* is established because they were replaced by Chris Bair, a male who was not pregnant. [*Id.* at 6]. In the alternative, they contend that their claim must survive summary judgment as long as they have presented a "convincing mosaic of circumstantial evidence" that Ferguson terminated them because they are women with responsibilities for young

---

**19.** King and Tahan made the same assertions in response to Ferguson's motion for summary judgment. plaintiffs bear the same evidentiary burdens whether they allege gender-plus or traditional sex discrimination.

children. The Court will address each argument in turn.

### 1. Does a Prima Facie Case of Gender-Plus Discrimination Require Plaintiffs to Identify Similarly Situated Male Comparators?

 Under the *McDonnell Douglas* analytical framework, the plaintiff bears the initial burden of presenting sufficient evidence to establish a prima facie case. *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089. This burden is not onerous. *Id.* at 253, 101 S.Ct. 1089. Nor was the method of establishing a prima facie case under the "*McDonnell Douglas* analytical framework ... '[ever] intended to be rigid, mechanized, or ritualistic. Rather it was merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.'" *Aikens*, 460 U.S. at 715, 103 S.Ct. 1478 (quoting *Furnco Constr. Corp. v. Waters*, 438 U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)); *accord Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002). That *McDonnell Douglas* does not render the elements of a prima facie case absolute has long been recognized in this circuit. *See, e.g., Adams v. Reed*, 567 F.2d 1283, 1285 n. 6 (5th Cir.1978) ("*McDonnell Douglas* makes it clear that the enumerated criteria are not 'wooden absolutes' ... [, and] we are unwilling to use the *McDonnell* tests as overly technical 'absolutes' ...." (internal citation omitted)); *see also Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir.2004) ("The methods of presenting a prima facie case are not fixed; they are flexible and depend to a large degree upon the employment situation." (citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1185 (11th Cir. 1984))).

Based on the prima facie case approved of in *McDonnell Douglas*,[20] numerous Eleventh Circuit cases hold that a plaintiff establishes a prima facie case of sex discrimination by showing that (1) the plaintiff was a member of a protected class; (2) the plaintiff was qualified for the job; (3) the plaintiff suffered an adverse employment action; and (4) the plaintiff was treated different than or replaced with someone outside of the protected class. *See, e.g., Walker v. NationsBank of Fla., N.A.*, 53 F.3d 1548, 1556 (11th Cir.1995); *Taylor v. Hudson Pulp & Paper Corp.*, 788 F.2d 1455,1459 (11th Cir.1986); *Lee v. Russell Cnty. Bd. of Educ.*, 684 F.2d 769, 773 (11th Cir.1982); *Davin v. Delta Air Lines, Inc.*, 678 F.2d 567, 570 (5th Cir. Unit B 1982); *see also* cases cited in note 17. Unfortunately, the circuit has not always fastidiously noted that this is not the only way to establish a prima facie case of discrimination. *Compare Underwood*, 431 F.3d at 794 ("[T]he plaintiff *must* prove ...." (emphasis added)), *with Wilson*, 376 F.3d at 1089 ("[A] plaintiff *may* establish a primary facie case of sex discrimination by showing ...." (emphasis added)).

 Despite these inconsistencies, the Court concludes that the better view is that *McDonnell Douglas* does not establish a one-size-fits-all criteria for the prima

---

20. The *McDonnell Douglas* Court found that the plaintiff had met his burden of establishing a prima facie case by showing "(i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications." 411 U.S. at 802, 93 S.Ct. 1817. But in a footnote, the Court noted: "The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from [the plaintiff] is not necessarily applicable in every respect to differing factual situations." *Id.* at 802 n. 13, 93 S.Ct. 1817.

facie case. After all, reducing this requirement to an inflexible criteria obfuscates its primary purpose—eliminating the most common nondiscriminatory reasons for the adverse employment action—and ignores the Court's conclusion that this burden is not onerous. *See Burdine,* 450 U.S. at 252–54, 101 S.Ct. 1089. Thus, to establish a prima facie case of gender-plus discrimination, King and Tahan need not show that they were replaced by a male with caretaking responsibilities for young children. But since their gender-plus claims rely on circumstantial evidence, they must set forth a prima facie case to survive summary judgment. *Id.* at 252–53, 101 S.Ct. 1089.

\* \* \*

The magistrate judge, however, concluded not only that the *McDonnell Douglas* framework requires King and Tahan to establish that they were replaced by a male with caretaking responsibilities for young children, but also that they have not done so. [R & R at 21, 28]. But this does not doom their gender-plus claims, according to the magistrate judge, because *Smith v. Lockheed—Martin,* 644 F.3d 1321 (11th Cir.2011), establishes an alternative framework that "effectively moots" this requirement given the facts here. [R & R at 19, 23–24].

The Court cannot agree. As explained in Part V.B.2, the Court holds that *Smith* does not represent an alternative analytical framework to that established by *McDonnell Douglas* and its progeny; instead, it sets out an alternative way for plaintiffs to satisfy the prima facie case requirement and clarifies the summary-judgment standard in Title VII cases. Put simply, *Smith* holds that plaintiffs can establish a prima facie case, as required by *McDonnell Douglas* and its follow-on cases, without pointing to a similarly situated comparator. *Smith* is thus consistent with the Court's conclusion that *McDonnell Douglas* does not create the sole test for a prima facie case.

Yet in an important respect, the magistrate judge is correct. When female plaintiffs alleging gender-plus discrimination point to a comparator to prove their prima facie case, they must show that the comparator is *both* male *and* has the relevant plus characteristic. Although the Eleventh Circuit has not directly addressed whether plaintiffs seeking to establish a prima facie case of gender-plus discrimination must show that their employer treated similarly situated males (as opposed to females lacking the plus characteristic) differently,[21] the other circuits to consider this issue have generally concluded that "gender-plus plaintiffs can never be successful if there is no corresponding subclass of members of the opposite gender." *Coleman v. B–G Maint. Mgmt. of Colo., Inc.,* 108 F.3d 1199, 1204 (10th Cir.1997); *accord Fisher v. Vassar Coll.,* 70 F.3d 1420, 1446–47 (2d Cir.1995); *Bryant v. Int'l Sch. Servs., Inc.,* 675 F.2d 562, 575 (3d Cir.1982); *cf. Derungs v. Wal–Mart Stores, Inc.,* 374 F.3d 428, 437–40 (6th Cir.2004) (in dicta). *But see Chadwick,* 561 F.3d at 48 (allowing plaintiff's sex-plus discrimination claim to survive summary judgment without a male comparator but supporting its decision by concluding that a reasonable jury could find that her employer would not have denied a similarly situated male the promotion).

To support this conclusion, these courts have reasoned that Title VII forbids dis-

21. The most relevant sex-plus discrimination cases in the Eleventh Circuit are three Former Fifth Circuit cases. *See Harper v. Thiokol Chem. Corp.,* 619 F.2d 489 (5th Cir.1980); *Jefferies v. Harris Cnty. Cmty. Action Ass'n,* 615 F.2d 1025 (5th Cir.1980); *Willingham,* 507 F.2d 1084.

crimination against not only women generally but also subclasses of women because in both cases the common denominator is gender. *Coleman,* 108 F.3d at 1203. Thus, if a woman cannot show that her employer treats the same subclass of men differently, then gender is not a factor; moreover, allowing her claim without such evidence would result in the protection of the characteristic rather than gender. *See id.* at 1204 ("Title VII prohibits employers from treating married women differently than married men, but it does not protect marital status alone."); *see also Willingham,* 507 F.2d at 1089 ("[S]imilarly situated individuals of either sex cannot be discriminated against vis à vis members of their own sex unless the same distinction is made with respect to those of the opposite sex.").

The Court therefore believes that when the Eleventh Circuit confronts this issue, it will agree with the reasoning of the Tenth Circuit. In fact, several courts in the Eleventh Circuit have already done so. *See Llana–Aday v. Dist. Bd. of Trs. of Miami–Dade Coll.,* No. 11–22825–CIV, 2012 WL 5833612, at *4–5 (S.D.Fla. Nov. 16, 2012) (holding that female plaintiff who identified male comparators but failed to show that they, like her, had caretaking responsibilities for young children had not established similarly situated comparators for purposes of her gender-plus claim); *Cote v. Shinseki,* No. 8:07–cv–1524–T–TBM, 2009 WL 1537901, at *14 n. 30 (M.D.Fla. June 2, 2009) (addressing gender-plus in a footnote and concluding that "the plaintiff must still prove that the subclass of women was unfavorably treated as compared to the corresponding subclass of men" (quoting *Coleman,* 108 F.3d at

1203)); *Longariello,* 987 F.Supp. at 1449 ("To establish a gender-plus marital status claim, [the plaintiff] must demonstrate that the [defendant] treated single men less favorably than it treated single women." (citing *Fisher,* 70 F.3d at 1447; and *Coleman,* 108 F.3d at 1203)).[22]

**2. Can King and Tahan Establish a Prima Face Case Under the Alternative Framework of *Smith v. Lockheed—Martin Corp.,* 644 F.3d 1321 (11th Cir.2011)?**

■■■ Given the Eleventh Circuit decision in *Smith,* King and Tahan argue that their gender-plus claims may survive summary judgment as long as they "present[ ] circumstantial evidence that creates a triable issue concerning the employer's discriminatory intent." *Chapter 7 Tr. v. Gate Gourmet, Inc.,* 683 F.3d 1249, 1255 (11th Cir.2012) (quoting *Smith,* 644 F.3d at 1328) (internal quotation marks omitted). This is because "[t]he *McDonnell Douglas* framework is not ... the only way to use circumstantial evidence to survive a motion for summary judgment, and a 'plaintiff's failure to produce a comparator does not necessarily doom [her] case.'" *Chapter 7 Tr.,* 683 F.3d at 1255 (final alteration in original) (quoting *Smith,* 644 F.3d at 1328); *see also Sims v. MVM, Inc.,* 704 F.3d 1327, 1333 (11th Cir.2013) (reaffirming the use of the *McDonnell Douglas* framework in ADEA cases but noting that "this framework is not the *sine qua non* for a plaintiff to survive summary judgment in a discrimination case" (citing *Smith,* 644 F.3d at 1328)). In Title VII cases, "[a] triable issue of fact exists if the record, viewed in a light most favorable to the plaintiff, presents 'a convincing mosaic of circumstantial

---

**22.** King and Tahan attempt to counter this conclusion by relying on the formulation of the *McDonnell Douglas* prima facie case requirement in *Cuddeback v. Florida Board of Education,* 381 F.3d 1230 (11th Cir.2004).

Because the Court assumes without deciding that they have established a prima facie case under *Smith, see infra* Part V.B.2, it need not address this argument.

evidence that would allow a jury to infer intentional discrimination by the decision-maker.'" *Smith*, 644 F.3d at 1328 (quoting *Silverman v. Bd. of Educ.*, 637 F.3d 729, 734 (7th Cir.2011) (citations and internal quotation marks omitted)).

The R & R states that "the Eleventh Circuit recognizes an alternative to the traditional *McDonnell Douglas* framework." [R & R at 23]. To the extent that the magistrate judge concludes, and King and Tahan argue, that *Smith* abrogates the prima facie case requirement, the Court cannot agree. And any suggestion to the contrary in *Smith* would strain against not only a long line of Eleventh Circuit precedent[23] but also *McDonnell Douglas* itself: "The complainant in a Title VII trial *must* carry the initial burden under the statute of establishing a prima face case of [unlawful] discrimination."[24] 411 U.S. at 802, 93 S.Ct. 1817 (emphasis added); *accord Reeves*, 530 U.S. at 142, 120 S.Ct. 2097; *Hicks*, 509 U.S. at 506, 113 S.Ct. 2742; *Burdine*, 450 U.S. at 252–53, 101 S.Ct. 1089; *Furnco Constr. Co.*, 438 U.S. at 576, 98 S.Ct. 2943.

■ The Court does agree, however, that *McDonnell Douglas* neither requires proof of a comparator nor provides the only way for plaintiffs to use circumstantial evidence to survive summary judgment. Any confusion likely results from the use of the phrase "the *McDonnell Douglas* framework" in *Smith* and *Chapter 7 Trustee*. The Court does not believe

that this refers to the entire analytical framework; instead, it most likely refers to the four-prong prima facie test. For example, in *Smith*, the court notes that "establishing the elements of the *McDonnell Douglas* framework is not, and never was intended to be, the *sine qua non* for a plaintiff to a survive summary judgment motion in an employment discrimination case" right after explaining that the district dismissed the plaintiff's case because he failed to establish a similarly situated comparator. 644 F.3d at 1327–28. Likewise, in *Chapter 7 Trustee*, the court states that "[t]he *McDonnell Douglas* framework is not ... the only way to use circumstantial evidence to survive a motion for summary judgment" immediately after highlighting the employer's argument that the plaintiff's prima facie case fails because she did not identify a similarly situated comparator. 683 F.3d at 1255. Therefore, the Court concludes that *Smith* does not represent an alternative to the entire *McDonnell Douglas* analytical framework, but it instead confirms the long-established law of this circuit: *McDonnell Douglas* does not establish the only criteria for the prima facie case.

■ Yet that criteria, as glossed by the Eleventh Circuit, remains relevant. In this circuit, plaintiffs who attempt to establish a prima facie case under the *McDonnell Douglas* test must show that the comparator is similarly situated in all relevant respects. *See Holifield*, 115 F.3d at 1562. When they fail to do so, their claims gen-

---

**23.** Even limiting the inquiry to sex-discrimination cases, the pre-*Smith* precedent holding that plaintiffs relying on circumstantial evidence must establish a prima facie case is well established. *E.g., Underwood*, 431 F.3d at 794; *Wilson*, 376 F.3d at 1091; *Joe's Stone Crabs*, 296 F.3d at 1272; *Durley v. APAC, Inc.*, 236 F.3d 651, 656 (11th Cir.2000); *Spivey v. Beverly Enters., Inc.*, 196 F.3d 1309, 1312 (11th Cir.1999); *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir.1999); *Walker*, 53

F.3d at 1556; *Armstrong v. Flowers Hosp., Inc.*, 33 F.3d 1308, 1313–14 (11th Cir.1994); *Batey*, 24 F.3d at 1333; *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1528 & 1532 n. 14 (11th Cir.1987).

**24.** Additionally, under this circuit's prior precedent rule, the *Smith* panel could not overrule any binding precedent. *See Bonner*, 661 F.2d at 1209.

erally do not survive summary judgment. *See, e.g., Lane v. McKeithen,* 423 Fed. Appx. 903, 906 (11th Cir.2011); *Brown v. Jacobs Eng'g, Inc.,* 401 Fed.Appx. 478, 480 (11th Cir.2010); *Reeves v. Yeager,* 298 Fed. Appx. 878, 879 (11th Cir.2008). This makes sense. After all, establishing a prima facie case should eliminate the employer's most common nondiscriminatory reasons for the adverse employment action. *See Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089. This is equally true for gender-plus claims.

But a similarly situated comparator may not always exist. For example, imagine a company that employs only two people (both female) with caretaking responsibilities for young children. Suppose that these women are fired and replaced by a male coworker. In a suit for gender-plus discrimination, they will be unable to identify a similarly situated comparator. Yet if failure to establish a comparator alone could exculpate employers, then many instances of intentional discrimination, provable only by circumstantial evidence, would likely evade judicial review. This is not now, nor has it ever been, the law in this circuit.

The *Smith* court confronted a similar problem. But rather than concluding, as the district court did, that the lack of a similarly situated comparator doomed the plaintiff's reverse-discrimination claim, the court found that "the record contained sufficient evidence to allow a jury to infer that Lockheed [his employer] fired [him] because he is white." *Smith,* 644 F.3d at 1328. To reach this conclusion, the court relied on a "convincing mosaic of circumstantial evidence." After a lengthy discussion of the record, the court held that summary judgment was precluded because the facts (1) suggested that the reason Lockheed gave for firing him was pretext for racial animus; (2) established that

Lockheed had a significant incentive to subject white employees to more harsh discipline than black employees; and (3) indicated that Lockheed "consciously injected race considerations into its discipline decision making without an adequate explanation for doing so." *Id.* at 1341. Summary judgment was inappropriate, in other words, because the plaintiff not only presented evidence sufficient to establish a prima facie case but also to raise a triable question regarding whether Lockheed's proffered reason for firing him was pretextual. The plaintiff therefore satisfied the two requirements of the *McDonnell Douglas* analytical framework. *See Burdine,* 450 U.S. at 252–53, 256, 101 S.Ct. 1089.

■ *Smith* makes clear that King and Tahan can establish a prima facie case— without identifying a similarly situated comparator—by offering circumstantial evidence that suggests their employer intentionally discriminated against them "with a force similar to that implied by treating nearly identical offenders differently." *Bell v. Crowne Mgmt., LLC,* 844 F.Supp.2d 1222, 1234 (S.D.Ala.2012). Under this alternative method, "any substitute evidence must be comparably powerful in order to preserve to the prima facie case its gate-keeping function as ordained by the Supreme Court." *Id.* at 1234.

The magistrate judge concluded that King and Tahan established a prima facie case under *Smith.* The Court, however, does not believe that their evidence is "comparably powerful" to evidence that Ferguson treated similarly situated males more favorably. Nor does it likely constitute a "convincing mosaic of circumstantial evidence" from which a reasonable factfinder could infer intentional discrimination. Unlike in *Smith,* the evidence does not establish that Ferguson (or Wallace or Bullington) had a reason to treat King and Tahan differently than their male cowork-

ers or that it (through Wallace or Bullington) consciously injected gender into the decision to fire them.

The Court, however, assumes without deciding that King and Tahan have established a prima facie case of gender-plus discrimination. And the Court likewise assumes without deciding that King has established a prima facie case of pregnancy discrimination. Because Ferguson has offered legitimate, nondiscriminatory reasons for its decision to fire them, *see supra* note 18, the inquiry now proceeds to the final part of the *McDonnell Douglas* analytical framework: whether they can present evidence to rebut or raise genuine issues about the truth of these reasons. The Court holds that they cannot.

### C. Have King and Tahan Rebutted Each Legitimate Nondiscriminatory Reason that Ferguson Proffers for Their Termination?

 King and Tahan's claims can survive summary judgment "if there is sufficient evidence to demonstrate the existence of a genuine issue of fact as to the truth of each of [Ferguson's] proffered reasons for its challenged action." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1529 (11th Cir.1997). They may establish pretext by showing "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in [Ferguson's] proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Springer v. Convergys Customer Mgmt. Grp. Inc.,* 509 F.3d 1344, 1348–49 (11th Cir.2007) (per curiam) (quoting *Cooper v. S. Co.,* 390 F.3d 695, 725 (11th Cir.2004)) (internal quotation marks omitted). To do so, King and Tahan may rely on either new evidence or evidence previously used to establish the prima facie case. *Combs,* 106 F.3d at 1528. But they are "not allowed to recast

[Ferguson's] proffered nondiscriminatory reasons or substitute [their] business judgment for that of [Ferguson]." *Chapman,* 229 F.3d at 1030. So long as its "reason is one that might motivate a reasonable employer, [King and Tahan] must meet that reason head on and rebut it, and [they] cannot succeed by simply quarreling with the wisdom of that reason." *Id.* Rebuttal therefore requires "significant probative" evidence of pretext; conclusory allegations alone are insufficient. *See Mayfield v. Patterson Pump Co.,* 101 F.3d 1371, 1376 (11th Cir.1996).

 Moreover, this Court will not "second-guess the business judgment of [Ferguson]." *See Combs,* 106 F.3d at 1543. Whether its employment decisions were "prudent or fair" is irrelevant. *See Damon v. Fleming Supermarkets of Fla., Inc.,* 196 F.3d 1354, 1361 (11th Cir.1999). In response to adverse economic conditions, Ferguson "is free to choose whatever means it wants, so long as it is not discriminatory," *Beaver v. Rayonier, Inc.,* 200 F.3d 723, 728 (11th Cir.1999), *quoted with approval in Chavez v. URS Fed. Technical Servs., Inc.,* 504 Fed.Appx. 819, 821 (11th Cir.2013); that includes "fir[ing] [King and Tahan] for a good reason, bad reason, a reason based on erroneous facts, or for no reason at all," *Nix,* 738 F.2d at 1187. To put the point bluntly, "[t]he inquiry into pretext centers on the [Wallace or Bullington's] beliefs, ..., not on reality as it exists outside of the decision maker's head." *Alvarez v. Royal Atl. Developers,* 610 F.3d 1253, 1266 (11th Cir.2010). And since King and Tahan have attacked the veracity of Ferguson's proffered reasons, "[the] inquiry is limited to whether [Ferguson] gave an honest explanation of its behavior." *Kragor v. Takeda Pharm. Am., Inc.,* 702 F.3d 1304, 1310–11 (11th Cir.2012) (first alteration in original) (quoting *Elrod v. Sears, Roebuck & Co.,* 939

F.2d 1466, 1470 (11th Cir.1991)) (internal quotation marks omitted).

### 1. Ferguson's Legitimate, Nondiscriminatory Reasons for Terminating King and Tahan

 Ferguson offers eight reasons for its decision to terminate King and Tahan:

1. The economic downturn in 2008 affected Atlanta HVAC's business and required it to cut labor costs.

2. Bullington and Wallace believed Atlanta HVAC was too small in size and sales to justify paying $75,000 for the operations manager position.

3. Wallace believed that the job-share arrangement hindered productivity and lacked continuity, and he preferred to have one full-time operations manager.

4. Bullington told Wallace that the operations manager position at a location the size and sales of Atlanta HVAC did not require a person to perform operations tasks on a full-time basis but a person who could also perform sales when needed.

5. King and Tahan were not interested in full-time employment.

6. King and Tahan did not have industry or product knowledge sufficient to sell HVAC products.

7. King and Tahan demonstrated to Wallace that they did not have an interest in learning the HVAC industry or the products Atlanta HVAC sold.

8. Bair had significant HVAC product knowledge and sales experience, was willing to work full time for less pay, and had sufficient operations knowledge.[25]

While King and Tahan argue that each reason is pretext, to survive summary judgment they must provide "significant probative" evidence that raises a triable issue regarding these legitimate, nondiscriminatory reasons. Because the same disputed facts and nondiscriminatory reasons relate to King and Tahan's gender-plus and King's pregnancy-discrimination claims, the Court's analysis applies to both claims.

### 2. Facts Related to the Decision to Terminate King and Tahan

After assuming the general manager position in December 2008, Wallace reviewed and evaluated all aspects of Atlanta HVAC, including the performance, duties, and contributions of the employees. During this review, he identified the operations position shared by King and Tahan as an area of concern. From the beginning, Wallace did not like the job-share arrangement; he believed that their extended absences from work were inefficient and hindered productivity. In King's 2009 performance evaluation, for example, he referred to the job-share arrangement as a "difficult environment." He testified that this perception was based on a lack of continuity and physical presence, but when pressed during his deposition, he could not provide a specific example of something falling through the cracks because of their split work schedule. [58 at 52–58].

King and Tahan counter that Wallace's dislike of their job-share arrangement was not based on any objective criteria. In their view, Wallace's issues were the result of a lack of understanding and a belief that "young mothers," a term he used to refer to them as four or five times during the nine or ten months they worked together, should not work. Aside from these unsubstantiated conclusions, they underscore

---

**25.** With some minor deviation, this list is taken from to the R & R.

that Rogers, who hired but did not fire them, had no issues with the job-share arrangement.

Yet even assuming that this is true, Rogers stopped being their manager in October 2008—a full year before they were terminated. Further, that Rogers had no issues with this arrangement is not evidence that Wallace, who fired them in October 2009, also did not. And while Wallace could not point to a single, specific continuity issue during his deposition, he did testify that he thought the arrangement was problematic. Moreover, whether Wallace's perception of the continuity issues was based in reality is inconsequential. *See Alvarez*, 610 F.3d at 1266. What matters is *why* he considered this arrangement troublesome. Unless this was because they were women with caretaking responsibilities for young children, their terminations were lawful.[26]

As proof of Wallace's discriminatory intent, the only evidence that they offer are his references to them as "young mothers" and Tahan's testimony that she believed that these references "put them at a disadvantage." But Wallace's sporadic comments and Tahan's self-serving conclusory testimony are hardly "sufficiently probative" evidence of discriminatory intent, especially given his testimony that he wanted a single person to fill the role of operations manager. Rather, their disagreement is little more than quibbling over Wallace's assessment of their abilities and his interest in having one full-time person staff the operations/sales position. Additionally, that they had been successful during their

tenure at Ferguson and received positive reviews, including from Wallace, is a far cry from meeting these reasons head on and rebutting them. *See Chapman*, 229 F.3d at 1030; *see also Chavez*, 504 Fed. Appx. at 821, 823 (noting that "while [the plaintiff] may have flourished as a branch manager in more prosperous times, she was not so fortunate when things got lean," and holding that even if she was more qualified than her replacement, "that [her replacement] is male does not transform a business decision, which we will not second guess, into discrimination").

Wallace was also concerned about King and Tahan's level of HVAC product and industry knowledge as well as their ability to make sales of HVAC products. While the parties disagree about whether they *in fact* had sufficient HVAC-related knowledge and sales ability, as well as whether they made a sufficient effort to acquire such knowledge, King and Tahan offer no evidence that Wallace did not *believe* that their deficient HVAC-related knowledge and sales ability limited their ability to contribute to the branch.

This is significant because Wallace testified that he intended to expand the responsibilities of the operations manager to include a sales component. But, according to him, he delayed making this change in order to give Bullington, Atlanta HVAC's new district manager, a chance to review the branch's performance. When Bullington visited Atlanta HVAC, he discussed refining the operations manager position so that the person filling that role would

---

**26.** King and Tahan also attempt to bolster their argument that Wallace had no objective reason for disliking the job-share arrangement by noting that Bullington was not aware of any continuity issues. This is far from surprising, however. Bullington, unlike Wallace, did not work with them on a day-to-day basis. And, again, even assuming that the job-share arrangement did not *in fact* create any continuity issues but was, as King and Tahan contend, a benefit to Atlanta HVAC, Wallace's factually incorrect (given these assumptions) belief to the contrary is circumstantial evidence of his intent to unlawfully discriminate against them.

handle both operations and sales. King and Tahan counter that the job responsibilities of the operations manager were ever changed. As support, they point out that (1) the job description for operations manager never changed, and (2) their replacement was told that he would be "helping out with sales," though, unlike actual sales positions at Ferguson, he has no sales goals.

This contention elevates form over substance and blinks at reality. For example, while the position was never formally redefined to include an explicit sales component or goals, it is undisputed that their replacement generally spends about 25 percent of his time on sales, and during busy periods—about four or five months out of the year—sales occupy about 50 percent of his time. This is in sharp contrast to the amount of time that King and Tahan spent on sales when they held the operations manager position, regardless of whether they willing and could have performed such sales.

Furthermore, Wallace testified that he wanted a single, full-time employee to fill the operations/sales position. But, in addition to not believing that either King or Tahan was qualified for this role (based on his assessment of their HVAC product knowledge and sales experience), he states that they had made it clear to him that they were not interested in a full-time position. Additionally, Bullington believed that $75,000 for an operations position was more than the business called for—a belief he shared with Wallace, as evidenced by the August 5 email Wallace sent him. For these reasons, Wallace decided to fill the operations/sales position with another Ferguson HVAC employee.

King and Tahan respond that neither Wallace nor Bullington asked whether they were interested in working full time; moreover, Tahan was planning to work full time during King's upcoming maternity leave and may have accepted the full-time operations position had she been offered it. In response to Bullington's belief that Atlanta HVAC's business did not justify a $75,000 operations manager, they note that Wallace's salary was substantially higher than similarly situated general managers.

Here, again, their objections miss the mark. First, regardless of whether Tahan (or King for that matter) would have accepted a full-time position, King and Tahan offer no evidence that rebuts Wallace's assertion that they had *previously* indicated that they were unwilling to do so. Further, while offering King and Tahan an opportunity to assume the operations/sales position—perhaps even with reduced pay—may be a preferable business practice, Wallace's failure to do so is not evidence of sex discrimination. Nor is the fact that Wallace's compensation was higher than other similarly situated general managers. During difficult economic times, Ferguson, like all businesses, is free to allocate its scarce resources any way it chooses, which includes overpaying some employees and underpaying others.[27] These types of decisions are allocated to the sound judgment of corporate executives and are beyond the reach of judicial review absent evidence of illegality. King and Tahan have failed to adduce any evidence that could lead a reasonable factfinder to doubt the truth of Wallace and Bullington's beliefs or explanations. *See Kragor*, 702 F.3d at 1310–11; *Alvarez*, 610 F.3d at 1266.

To fill the operations/sales role, Wallace chose Chris Bair. Unlike King and Tahan, Bair already worked full time at the Marietta satellite office of Atlanta HVAC,

**27.** The Court takes no position on whether Wallace was in fact overpaid.

where since February 2009 he served as branch manager. He also had considerable HVAC sales experience and industry knowledge. Moreover, when Bair assumed the operations manager position, his salary was $48,850—nearly $30,000 less than the combined salary of King and Tahan—and he did not receive a raise.

King and Tahan argue that Bair was not qualified to replace them as operations manager. While they do not dispute his HVAC sales experience—or that as HVAC operations manager, sales occupy a nontrivial portion of his workweek—their argument rests on four facts. First, he had no formal operations training; his knowledge was limited to what he had learned as branch manager of the Marietta satellite office. Second, Bullington had concerns about his knowledge level at this point in his career. Third, they were asked to help train Bair after being notified that they were being replaced. And finally, the district operations manager made five or six trips during Bair's first year, and other trips since then, to train Bair on operations matters. In contrast, according to King and Tahan, the district operations manager said he did not need to visit Atlanta HVAC because they needed no operations help.

Yet even at face value, these facts do not suggest that Ferguson's decision to promote Bair, who had some operations experience and agreed to accept the revised operations/sales position for far less pay than King and Tahan, was one "that no reasonable person, in the exercise of impartial judgment, could have chosen." Put simply, even granting all of the deficits that King and Tahan allege, Ferguson could have reasonably concluded that these were offset by the fact that his salary was significantly less than King and Tahan's, among other things. *Chavez*, 504 Fed. Appx. at 823 (quoting *Cooper*, 390 F.3d at

732). Who was better qualified for the job is irrelevant. *Id.* This Court will not "second-guess the business judgment of [Ferguson]." *See Combs*, 106 F.3d at 1543.

\* \* \*

In sum, King and Tahan have failed to meet Ferguson's legitimate, nondiscriminatory reasons head on and rebut them with sufficiently probative circumstantial evidence. *See Mayfield*, 101 F.3d at 1376. Most of the circumstantial evidence they marshal quarrels with the soundness of Ferguson's business judgments; thus, it cannot be used to rebut Ferguson's proffered reasons. *See Chapman*, 229 F.3d at 1030. Even if the scant circumstantial evidence that remains is sufficient to establish a prima facie case under *Smith*, it is not enough to survive summary judgment in the face of nondiscriminatory reasons that might have motivated a reasonable employer to replace them with Bair. Despite viewing the circumstantial evidence in the light most favorable to King and Tahan, the Court finds that it fails to create a "convincing mosaic" from which a reasonable factfinder could infer that Ferguson fired them based on sex. *See Smith*, 644 F.3d at 1326. Nor does it create an issue of fact about whether Ferguson's reasons are pretextual and whether discrimination is the true reason. *See Chapman*, 229 F.3d at 1024–25. Having failed to establish an essential element of the *McDonnell Douglas* analytical framework (rebuttal of Ferguson's proffered legitimate, nondiscriminatory reasons), summary judgment on their gender-plus and King's pregnancy-discrimination claims is appropriate as a matter of law. *See Celotex*, 477 U.S. at 322, 106 S.Ct. 2548. Ferguson's motion for summary judgment is therefore granted.

## VI. Conclusion

The R & R is ADOPTED in part and REJECTED in part; Defendant Fergu-

son's motion for summary judgment [48] is GRANTED; and Plaintiffs King and Tahan's complaint is DISMISSED. The Clerk is DIRECTED to close this case.